**TESTON et ux. v. THOMPSON.**

Clv. A. No. 2274.

District Court, W. D. Louisiana,
Alexandria Division.

May 18, 1948.

824

John R. Hunter, Jr., of Alexandria, La., for plaintiffs.

Fred G. Hudson, Jr., of Monroe, La., for defendant.

PORTERIE, District Judge.

The following findings of fact, we believe, give a sufficient narrative.

1. This action is here by removal by this defendant from the Ninth District Court, Rapides Parish, Louisiana. No remand was sought and no objection interposed to the jurisdiction of this court over this action insofar as this defendant is concerned—the removal proceedings alleging a separable controversy and asserting the sole responsibility, if any, of this de-fendant to these plaintiffs consequent upon the episode out of which this action arises. No jury was prayed for and this cause was tried and submitted on May 3-6, 1948, at Alexandria Louisiana.

2. The plaintiffs were husband and wife, occupants of an automobile belonging to the community of property existing between them under the law of Louisiana; being driven by the wife with the husband's knowledge, permission and acquiescence, returning home from work at their place of business in downtown Alexandria to their home in the residential district—a customary community mission.

3. The husband occupied the front seat beside his wife. They approached the grade crossing where a main thoroughfare of Alexandria intersects at grade three tracks of defendant at a speed of 25 to 30 miles per hour, which exceeded by 5 to 10 miles per hour the speed limit fixed for passenger automobiles by Municipal Ordinance No. 429 at 20 miles per hour.

4. As they came to and drove upon the first of the three tracks at this railroad crossing the speed of the automobile was reduced to an approximate speed of fifteen (15) miles per hour, and when the first two tracks had been crossed and the automobile was about midway on the third track, it was collided with by a cut of fourteen loaded freight cars running at about 8 miles per hour, and shoved down that track a distance, measured by the police, of 269 feet—a not unreasonable distance under the existing circumstances and in the emergency suddenly presented and according to the weight of the testimony adduced.

5. Mrs. Teston was, fortunately, injured but slightly, if at all, but suffered considerable shock. The drawhead of the lead car, a gondola car heavily loaded with gravel—as were eleven of the fourteen cars—protruded into the side door of the automobile. Mr. Teston had been suffering and partially incapacitated from a previous hip injury, and in this accident suffered a broken leg and other injuries. In view of the court's findings as to the facts and law here applicable, it is not necessary to decide the extent of additional injury, suffering, medical expense or whether his injuries

were consequent primarily upon the original impact or subsequent shoving. The auto was impaled upon the gondola car and never turned over, remaining upright until its occupants, remaining conscious, were removed after the train came to a stop.

6. While there is some dispute, the clear preponderance of the evidence established that the driver and the occupant were inattentive to their surroundings, as they proceeded over this crossing, without observing the mandate of the statutory law of Louisiana (Rule 17, Sec. 3, Act 286 of 1938, 4 Dart's Gen. Stats. Sec. 5222) to stop, look and listen when approaching and before going upon a railroad grade crossing.

7. The Washington street crossing was well lighted by street lights upon both sides, by various neon signs in the neighborhood, by the headlights of several automobiles, including plaintiffs' car and one car which was standing near the crossing on the right side of the street and which plaintiffs' car had to run around before going onto this crossing. In addition, this crossing was protected by electric wig-wag flashing red traffic signals, which the preponderance clearly establishes as operating as plaintiffs' car approached. This record also establishes that at the front corner of the forward end of the lead car of the approaching cut of cars there was standing a switchman with a lighted and plainly visible electric lantern. The bell and whistle of the engine were being sounded.

8. The honest candor and frankness of both plaintiffs is noted but the unfortunate fact remains that they, neither of them, saw or attempted to heed the above warnings or plainly visible approaching train. Plaintiffs acknowledged frequent daily use and entire familiarity with this crossing, its location within switch yard limits and its frequent use by trains at all hours of day and night. Their view was in no way obstructed.

### Conclusions of Law

1. The facts here failing to establish any negligence upon defendant in the operation of its train, no basis exists for recovery.

2. The statutory law and jurisprudence of Louisiana require every person driving or permitting an automobile to be driven over a railroad grade crossing to effectively stop, look and listen, before entering thereupon. The more difficult it is for them to hear or see approaching trains, the greater degree of caution the law requires, because the track itself constitutes a warning of danger, especially where familiar with such crossing and its frequent use, as here shown.

3. The inattentiveness of both the wife-driver and the husband-occupant of this automobile, their failure to see that which was clearly visible or to hear that which was obviously audible, constitute negligence on the part of each of them, which negligence was the sole, proximate cause of the injuries received by them.

4. Even should the railroad be held or deemed chargeable with any fault or neglect proximately related to the collision, and even if Mr. Teston be absolved from any blame, there can still be no recovery because the negligence here of the driver of this car is abundantly established, and since she was driving a community automobile upon a community mission with the full knowledge and consent of the husband, who was present in the car, her negligence is attributable to him. Here contributory negligence is affirmatively pleaded as a defense against the claims of both. It is established by the evidence and constitutes a complete bar as to each.

5. The last, clear chance doctrine was not specifically pleaded here, but there exists no factual basis for its application, in any event; the emergency presented by plaintiffs' negligence having afforded defendant's trainmen no actual opportunity to either, thereafter, prevent the collision or, theretofore, anticipate plaintiffs' hazard.

Accordingly, the judgment will be signed in favor of defendant and against the two plaintiffs.